IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MARGARET OSMOND,<br><br>    Plaintiff,<br><br>vs.<br><br>LITTON LOAN SERVICING, LLC, and HSBC BANK USA, NATIONAL ASSOCIATION and DOES 1 through 20,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:10-CV-11<br><br>Judge Dale A. Kimball |

This matter is before the court on the Defendants' Motion to Dismiss, filed by Litton Loan Servicing, LLC ("Litton") and HSBC Bank USA, National Association ("HSBC").[1] The court has carefully considered the pleadings, memoranda, and other materials submitted by the parties and the law and facts relating to this motion. The court concludes that oral argument would not materially assist the court in rendering a decision. Now being fully advised, the court issues the following Memorandum Decision and Order.

---

[1] Defendants' Motion to Dismiss, docket no. 7, filed Feb. 14, 2011.

1

INTRODUCTION

Margaret Osmond ("Osmond") purchased a home in Farmington, Utah in 2004.[2] Soon thereafter, Osmond had difficulty making the mortgage payments, which led to a default in January of 2006.[3] This default was soon cured, but Osmond began a loan modification process with Defendant Litton in 2007.[4] In February of 2009, Litton informed Osmond that a loan modification application was in progress.[5] Through 2009, Osmond received various notices of default and sale, none of which resulted in the sale of the home.[6] On November 8, 2009, Osmond was notified that her application for loan modification had been denied.[7]

Osmond attempted to continue the loan modification process, with some indications from various employees of Litton that the process could be continued.[8] In December of 2009, an employee of Litton told Osmond that she was "wasting [her] time" and that "[she didn't] know why [Osmond] was told to send in more paperwork."[9] On December 23, 2009, Osmond received

---

[2] Complaint and Jury Demand ("Complaint") at 3, docket no. 1, filed Jan. 29, 2011.

[3] *Id.*

[4] *Id.*

[5] *Id.* at 4.

[6] *Id.* at 4-7.

[7] *Id.* at 8.

[8] *Id.* at 9-10.

[9] *Id.* at 11.

a notice of foreclosure with a sale date of February 2, 2010.[10] On January 29, 2010, Osmond filed this action.[11]

DISCUSSION

Osmond has filed eight causes of action against Defendants: 1) breach of implied covenant of good faith and fair dealing, 2) breach of contract, 3) negligent misrepresentation, 4) fraud, 5) negligent infliction of emotional distress, 6) intentional infliction of emotional distress, 7) violations of the Fair Debt Collections Practices Act ("FDCPA"), and 8) violations of the Truth in Lending Act ("TILA"). Defendants now move to dismiss all eight claims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### Breach of Implied Covenant of Good Faith and Fair Dealing

Osmond argues that Defendants breached the implied covenant of good faith and fair dealing by failing to complete the loan modification process. Osmond also argues that the Defendants breached their duty by failing to provide clear information concerning the status of loan modification and the eventual outcome of that process.

In Utah, courts have recognized that contracts contain an implied covenant of good faith and fair dealing.[12] This covenant requires parties to refrain from intentionally committing actions that would destroy or injure the ability of other parties to gain the benefits of the contract.[13] However, the implied covenant does not require parties to exercise or not exercise their rights

---

[10] *Id.*

[11] *Id.* at 1.

[12] *St. Benedict's Development Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991).

[13] *Id.*

under the contract to their own detriment.[14] The implied covenant also does not require parties to alter a contract or inject additional substantive terms, even if doing so would be greatly to another party's advantage.[15] In order to state a cause of action for a violation of the implied covenant of good faith and fair dealing, a party must lose a right that was possessed under the original contract.[16]

Osmond's complaint falls short in two critical respects. First, Osmond has identified no provision in the original agreement between the parties that entitles her to any sort of loan modification process. Parties can renegotiate the terms of contracts. However, the implied covenant of good faith and fair dealing does not require either party to entertain a request to renegotiate the terms of the contract. In order to state a claim for violation of the implied covenant of good faith and fair dealing, Osmond must show that she was denied a benefit of the original contract.[17] Because there was no loan modification guaranteed under the original contract, Defendants cannot be liable for a breach of the implied covenant of good faith and fair dealing because of their refusal to conduct a loan modification process.

Second, Utah law permits parties to exercise or refuse to exercise the rights granted to them by contracts.[18] The implied covenant of good faith and fair dealing does not imply that a

---

[14] *Rio Algom Corp. v. Jimco Ltd.*, 618 P.2d 497, 505 (Utah 1980).

[15] *Dalan v. Paracelsus Healthcare Corp. of N.D., Inc.*, 640 N.W.2d 726, 731 (N.D. 2002).

[16] *St. Benedict's*, 811 P.2d at 200; *see also Phelps v. Frampton*, 170 P.3d 474, 485 (Mont. 2004).

[17] *Id.*

[18] *Rio Algom*, 618 P.2d at 505.

4

party is bound to forego its rights, even if another party is disadvantaged by this action. Osmond's argument is essentially that Defendants cannot foreclose because they refused to modify her loan, which she believes to be required under the implied covenant of good faith and fair dealing. But, as the *Rio Algom* court held, the implied covenant of good faith and fair dealing does not prevent parties from exercising their rights. Defendants had the right to foreclose on the house in the event of default. Once Osmond defaulted, Defendants had the right to foreclose, regardless of any loan modification that might have been in progress. Exercising this remedy cannot be a breach of the implied covenant of good faith and fair dealing. Therefore, the claim is dismissed.

Breach of Contract

Osmond's claim for breach of contract asserts that Osmond relied on Defendants' representations that a loan modification agreement would be reached and that a contract was thereby formed. It is unclear whether Osmond is arguing that a contract was implicit in the discussions between Osmond and Defendants or that Osmond is entitled to rely on Defendants' representations under a promissory estoppel theory. In either event, the complaint fails to state a claim.

There are two problems with Osmond's argument that the discussions with Defendants created a contract. First, Osmond claims that they had agreed to proceed with the loan modification process in good faith. This would modify the existing loan agreement by contract if Osmond's theory is correct. However, a contract to modify an existing agreement must include consideration.[19] Osmond did not offer consideration for a loan modification. Therefore, there

---

[19] *Nordfors v. Knight*, 60 P.2d 1115, 1118 (Utah 1936).

can be no contract. Moreover, parties seeking to modify a contract must reach a meeting of the minds on the modification.[20] A meeting of the minds must include a clear and mutual understanding of the essential terms, which cannot be indefinite.[21] Osmond's complaint does not suggest what these terms were. It is not possible to create an enforceable contract in which the parties generically agree to modify another contract that has definite terms. A legitimate meeting of the minds would spell out the terms on which the loan would be modified. Since there were never agreed upon terms, there is no contract.

A promissory estoppel theory fares no better. A promissory estoppel claim requires that the plaintiff act with reasonable reliance on a promise by the defendant and suffer a loss as a result of this reliance.[22] First, even assuming *arguendo* that Defendants made a promise, it is not clear that Osmond acted in reliance on that promise. Osmond fails to identify any action that she took in reliance on the loan modification process. Osmond certainly wanted the process to turn out favorably, but Osmond does not demonstrate that she did something that she would not have done if Defendants had not made a promise. Second, Osmond did not lose anything as a result of any reliance that was present. In order to state a claim for promissory estoppel, Osmond must show that she suffered damage because of her reliance on the defendant's promise. Osmond's complaint contains no statement that she was worse off because of the loan modification process. She makes no assertion that she was forced to pay more or do anything because of the process.

---

[20] *Provo City Corp. v. Nielson Scott Co., Inc.*, 603 P.2d 803, 806 (Utah 1979).

[21] *Prince, Yeates, and Geldzahler v. Young*, 94 P.3d 179, 183 (Utah 2004).

[22] *Youngblood v. Auto-Owners Ins. Co.*, 158 P.3d 1088, 1092 (Utah 2007).

Indeed, if there had never been a loan modification process, Osmond likely would have been removed from her home sooner. Therefore, a promissory estoppel claim fails as well.

Negligent Misrepresentation

A claim for negligent misrepresentation requires the plaintiff to have acted reasonably on a misrepresentation and suffer loss as a result.[23] Osmond does not specifically identify the misrepresentation that was made during the loan modification process. However, even assuming that Defendants misrepresented a material fact in this case, Osmond fails to show that she acted on a misrepresentation or that she lost something as a result. Osmond alleges that she relied on the misrepresentations, but never states what she did in reliance on the actions. Even more telling, Osmond does not specify what she lost as a result of the loan modification process. As noted above, Osmond was not entitled to a loan modification. She made no payments and took no actions in reliance on a modification. Therefore, her claim for negligent misrepresentation fails.

Fraud

To state a fraud claim, Osmond must allege that she acted on a misrepresentation and suffered a loss as a result.[24] As stated above, Osmond does not show what actions she took as a result of the loan modification process or how she was harmed by it. Therefore, she cannot state a fraud claim.

Moreover, Rule 9(b) of the Federal Rules of Civil Procedure requires that fraud allegations be plead with particularity. "A complaint must set forth the time, place, and contents

---

[23] *DeBry v. Valley Mortg. Co.*, 835 P.2d 1000, 1008 (Utah App. 1992).

[24] *Pace v. Parrish*, 247 P.2d 273, 274-75 (Utah 1952).

of the false representation, the identity of the party making the false statements, and the consequences thereof."[25] The complaint fails to meet this standard. Osmond never identifies the specific statement that she relied upon and does not provide the information about that statement that the Tenth Circuit required in *Schwartz*. Because she fails to provide this information, the fraud claim is not plead with particularity and does not satisfy Rule 9(b).

## Negligent Infliction of Emotional Distress ("NIED")

To state a claim for NIED in Utah, the plaintiff must allege that the defendant should have realized that his actions would create an unreasonable risk of the emotional distress and that the distress might result in illness or bodily harm.[26] In order to sustain a claim, the plaintiff must allege that the distress has caused a situation with which a reasonable person, normally constituted, could not cope.[27] Stress, anxiety, and depression occur in daily life, and these symptoms are insufficient to support an NIED claim.[28]

Osmond does not allege the kind of emotional distress that meets this standard. Osmond does not describe her symptoms except to say that she has experienced "horrible emotional distress...that has consumed her hourly and in all of her activities."[29] Unsubstantiated, conclusory

---

[25] *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997).

[26] *Harnicher v. Univ. of Utah Med. Ctr.*, 962 P.2d 67, 69 (Utah 1998).

[27] *Id.* at 72. *See also Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 975 (Utah 1993).

[28] *Hansen*, 858 P.2d at 975.

[29] Complaint at 20.

allegations of severe emotional distress are insufficient to state a claim for NIED.[30] Osmond does not claim to have seen a doctor, been diagnosed with any mental or physical illness, or experienced any particular distress as a result of the loan modification process. While Osmond's financial distress and difficulties with Defendants may be upsetting, being upset is insufficient to state an NIED claim.

In addition, Osmond does not allege that Defendants have taken any action that is likely to cause the sort of emotional distress with which an ordinarily constituted reasonable person cannot cope. While the court does not mean to suggest that foreclosure is not an upsetting experience, it is not the sort of experience that leaves the average person unable to cope or live his or her life. Osmond cannot state an NIED claim unless she can show that Defendants should have known that their actions would create an unreasonable risk of this kind of emotional distress.[31] Osmond merely claims that Defendants should have known that the process was highly stressful for the people involved.[32] This is not sufficient to state a claim for NIED and the claim is therefore dismissed.

## Intentional Infliction of Emotional Distress ("IIED")

To state a claim for IIED, Osmond must allege that Defendants intentionally did something that is so outrageous as to offend society's standards of decency and morality.[33] This

---

[30] *Hansen*, 858 P.2d at 975.

[31] *Id.*

[32] Complaint at 19-20.

[33] *Bennett v. Jones, Waldo, Holbrook, and McDonough*, 70 P.3d 17, 30 (Utah 2003).

9

must be determined by the facts in the complaint.[34] The defendant's conduct must go beyond insults, threats, indignities, or petty oppressions.[35]

Osmond alleges nothing that rises to this level. At most, Osmond alleges a confusing foreclosure and loan modification process in which Defendants were not wholly truthful. The most inflammatory statement that Osmond attributes to Defendants occurred when Osmond was told "you are wasting your time...you are denied!"[36] This statement is not the type of outrageous conduct that supports an IIED claim. Further, Osmond pleads no facts to suggest that the actions of defendants were intentionally calculated to cause significant emotional distress or that the defendants should have known that their conduct was outrageous. Merely pleading a conclusion does not allow an IIED claim to survive a motion to dismiss: the pleading must contain facts that would support that conclusion.[37] Therefore, Osmond's IIED claim is dismissed as well.

Fair Debt Collections Practices Act

Osmond alleges that Defendants violated the Fair Debt Collections and Practices Act ("FDCPA"). The FDCPA defines abusive debt collection communications as threats of violence, offensive obscenities, and harassment.[38] Osmond has alleged none of these actions. Osmond has also failed to allege that Defendants called her or anyone else at a time or in a manner forbidden by the FDCPA. At most, the communications between Osmond and Defendants caused the

---

[34] *Id.*

[35] *Id.* at 32.

[36] Complaint at 11.

[37] *Bennett*, 70 P.3d at 30.

[38] 15 U.S.C. §1692d.

embarrassment and inconvenience that is inherent to the collection of debt. This level of irritation is insufficient as a matter of law to support a claim under the FDCPA.[39] Osmond's FDCPA claim is therefore dismissed.

Truth in Lending Act

Osmond also alleges that Defendants' actions violate the Truth in Lending Act (TILA). Osmond's complaint does not identify any specific provision of TILA that Defendants violated and does not specifically identify the conduct that she believes to be in violation of the statute. In Osmond's response memorandum, however, she argues that TILA should be extended to the loan modification process, arguing that new communications with lenders about a loan modification are likely to be construed by the public as lending activity and that the one year time limit to commence a TILA action should restart upon such communication.[40]

The one year time limit on TILA actions begins at the time of the creation of a contractual relationship between a creditor and a customer.[41] In *Stevens*, the Tenth Circuit held that this is not a continuing violation and that the one year period begins at the creation of the contract, explicitly rejecting Osmond's theory.[42] The *Stevens* court explained further that until a contract is completed, there can be no violation of TILA, even when legally required disclosures have not

---

[39] *Bieber v. Associated Collection Serv., Inc.*, 631 F.Supp 1410 (D. Kan. 1986).

[40] Plaintiff's Response to Defendant's Motion to Dismiss ("Response") at 21, docket no. 12, filed Mar. 17, 2011.

[41] *Stevens v. Rock Springs Nat. Bank*, 497 F.2d 307, 309-10 (10th Cir. 1974); *see also Betancourt v. Countrywide Home Loans, Inc.*, 344 F.Supp.2d 1253, 1258-59 (D. Colo. 2004).

[42] *Stevens*, 497 F.2d at 310.

yet been made.[43] As discussed above, there was no contract for a loan modification. Therefore, Osmond's TILA claim is dismissed.

## ORDER

For the reasons above, Defendants' Motion to Dismiss is GRANTED.

DATED this 20th day of May, 2011.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge

---

[43] *Id.*